UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN WILLIAMS,<br>Plaintiff,<br>v.<br>TEX-TECH ENGINEERED COMPOSITES, LLC,<br>Defendant. | Case No. 2:26-cv-04926-MAR<br><br>ORDER GRANTING MOTION TO REMAND, DKT. 7 |

**I.**

**INTRODUCTION**

Plaintiff Glenn Williams ("Plaintiff") filed the instant action, on behalf of a putative class, in Los Angeles County Superior Court on March 26, 2026. ECF Docket No. ("Dkt.") 1-1. Defendant Tex-Tech Engineered Composites, LLC ("Defendant" or "GM") removed the matter to this Court on May 7, 2026 on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. Dkt. 1 at 2. Plaintiff now moves to remand to state court, arguing that Defendant has failed to establish that this Court has subject matter jurisdiction. Dkt. 7. For the reasons stated below, the motion is **GRANTED**.

///

///

///

**II.**

**BACKGROUND**

Plaintiff, a citizen of California, was employed by Defendant, a citizen of California. Complaint ("Compl."), Dkt. 1-1 ¶¶ 8, 10. Plaintiff filed the instant putative class action Complaint in Los Angeles County Superior Court, alleging "a pattern of wage and hour violations" and six related claims, including claims for failure to provide required meal and rest breaks, failure to provide accurate wage statements and timely pay all wages due, and failure to pay overtime. Id. ¶¶ 2, 25–28. The Complaint defines the proposed class period as spanning "between four years prior to the filing of this action and the date of class certification," or, in other words, a period commencing on March 26, 2022. Id. ¶ 19.

There appears to be no dispute that Plaintiff, during the time of his employment, was covered by a collective bargaining agreement ("CBA") between Defendant and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local 00675 ("the Union"). Notice of Removal ("NOR"), Dkt. 1 at 3. Defendant asserts that resolution of the wage and hour claims alleged in the Complaint require interpretation of the CBA, and therefore arise under federal law, are preempted by the Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and confer original, federal question jurisdiction on this Court pursuant to 28 U.S.C. § 1331. NOR at 2–3.[1]

---

[1] More precisely, Defendant contends that Plaintiff's overtime claim is preempted, and that his wage statement and waiting time penalty claims are "derivative" of that predicate claim, and rise or fall with it. Opposition at 9:4–6. Defendant does not contend that Plaintiff's remaining meal and rest brake claims and unfair competition claims are preempted, but rather that, if the overtime and derivative claims are preempted, then this Court should exercise supplemental jurisdiction over the other claims. Opp. at 12:11–14.

By way of the instant motion, Plaintiff asserts that there is no basis for federal question jurisdiction, and that this matter must therefore be remanded to state court.

**III.**

**LEGAL STANDARD**

District courts have original, or "federal question" jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A defendant may remove a case from state court to federal court if the case could have originally been filed in federal court. See 28 U.S.C. § 1441(a). The case must, however, be remanded to state court if, at any time before final judgment, it appears that the federal court lacks subject matter jurisdiction. See 28 U.S.C. § 1447(c); Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 87 (1991). Federal courts "strictly construe the removal statute against removal jurisdiction," such that any doubt as to the propriety of removal is resolved in favor of remanding the case to state court. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). A removing defendant bears the burden of proving federal jurisdiction. See Luther v. Countrywide Home Loans Servicing, LP, 533 F.3d 1031, 1034 (9th Cir. 2008); Gaus, 980 F.2d at 566.

**IV.**

**DISCUSSION**

Defendant removed to this Court on the basis that resolution of Plaintiff's wage and hour claims requires interpretation of the CBA between Defendant and the Union. Generally, a defendant may not remove a case from state court to federal court on the basis of a federal defense. See Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987). "There are, however, a handful of 'extraordinary' situations where even a well-pleaded state law complaint will be deemed to arise under federal law for jurisdictional purposes." Holman v. Laulo-Rowe Agency, 994 F.2d 666, 668 (9th Cir. 1993); see also Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1107

(9th Cir. 2000) ("The Supreme Court has concluded that the preemptive force of some statutes is so strong that they 'completely preempt' an area of state law."). Cases arising under the LMRA may fall under one such exception.[2] Id. The LMRA is designed "to be used to address disputes arising out of labor contracts." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985). It therefore preempts state claims "even in some instances in which the plaintiffs have not alleged a breach of contract in the complaint, if the plaintiffs' claim is either grounded in the provisions of the labor contract or requires interpretation of it." Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007).

At the same time, however, "the Supreme Court has stressed that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." Curtis v. Irwin Indus., Inc., 913 F.3d 1146, 1152 (9th Cir. 2019) (internal quotation marks omitted). Thus, to determine whether a claim is preempted, courts conduct a two-step analysis. Burnside, 491 F.3d at 1059. The first question is "whether the asserted cause of action involves a right that exists solely as a result of the CBA." Curtis, 913 F.3d at 1152 (internal alteration and quotation marks omitted); see also Renteria-Hinojosa v. Sunsweet Growers, Inc., 150 F.4th 1076, 1088 (9th Cir. 2025) ("The collective bargaining agreement must be the only source of the right the plaintiff seeks to vindicate.") (internal quotation marks omitted). If not, the second step looks to "whether a plaintiff's state law right is substantially dependent on analysis of the CBA, which turns on whether the claim cannot be resolved by simply 'looking to' versus 'interpreting' the CBA." Curtis, 913 F.3d at 1153 (internal alteration and quotation marks omitted). If a court can merely "look to" the CBA, the claim is not "substantially dependent" on a CBA, and the claim is not preempted.

---

[2] Under section 301 of the LMRA, "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

Burnside, 491 F.3d at 1060. If, on the other hand, the court is required to "interpret" the CBA, the claim is "substantially dependent" on the CBA, and is preempted. Id.

**A. Step One**

Here, there is no dispute that Plaintiff's overtime arises, on its face, from the overtime provisions of California Labor Code § 510. Defendant argues, however, that the CBA here meets the requirements of California Labor Code § 514, thus rendering Section 510 inapplicable and supplanting it as the exclusive source of Plaintiff's claim. NOR ¶ 22; Opposition ("Opp.") at 6. Under Section 514, Section 510 "do[es] not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly . . . provides for . . . premium rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. Thus, if the CBA here does indeed set minimum pay at a sufficient rate, Plaintiff's claims are substantially, if not entirely, dependent upon the CBA rather than state law, and are preempted. At step one, "[t]he essential inquiry is this: Does the claim seek purely to vindicate a right or duty created by the CBA itself?" Curtis, 913 F.3d at 1152 (internal alteration omitted) (emphasis added).

As an initial matter, the term "the CBA," used above, is something of a misnomer. Although the parties agree that Plaintiff was covered by a CBA at various points in time, two different CBAs were in effect during the relevant class period. The current, "Operative CBA," took effect February 15, 2023. First Declaration of Ellen Whitesides, Dkt. 2-1, Ex. A § 1.1. The Operative CBA ("CBA 1") supplanted a prior, "Predecessor CBA," ("CBA 2"), which took effect on March 1, 2022. Second Declaration of Ellen Whitesides, Dkt. 14-1, Ex. A § 1.1. Both the Operative CBA and the Predecessor CBA provide rates of pay for covered employees. CBA 1 at 36; CBA 2 at 36. The question is whether the CBAs provided for rates of pay sufficient to

trigger California Labor Code Section 514's exemption from the minimum wage and overtime requirements of Section 510.

In both instances, the answer is: not completely. There appears to be no dispute that, starting January 1, 2023, the minimum wage in California for employers with fewer than 25 employees (a group to which the parties appear to agree that Defendant belonged), was $15.50 per hour. See https://www.dir.ca.gov/dlse/faq_minimumwage.htm. To meet Section 514's exemption threshold, therefore, the CBAs must have provided for a rate of pay of at least $20.15. Neither CBA did so—at least not entirely. The Predecessor CBA provided for a minimum rate of pay of only $20.07, effective March 1, 2022. PCBA, Dkt. 14-1 at 36. Although that rate was sufficient to qualify for the Section 514 exemption prior to January 1, 2023, when the California minimum wage went up, it was not sufficient to meet the $20.15 threshold necessary after that date.

The Operative CBA remedied that deficiency, but only as of a certain point. The Operative CBA took effect on February 15, 2023, and retroactively provided for a minimum wage of $20.15, but only as of February 10, 2023. OCBA, Dkt. 2-1 at 36. Thus, from January 1, 2023 to February 9, 2023, the CBA-mandated minimum wage for Defendant's covered employees was only $20.07, and Section 514 therefore did not exempt Defendant from the provisions of Section 510 for that six-week period.

Defendant also argues that the Operative CBA "expressly provides at Article 18.1 that should the wage rates . . . 'ever' fall below the [Section 514] 30% threshold, then they will be 'automatically raised to satisfy the threshold.'" Opp. at 7:15–17 (quoting OCBA, Dkt. 2-1 § 18.1 ("If the Minimum rate is ever below 30% above the California state minimum wage, it shall automatically be adjusted to be 30% above said minimum wage."). So it does. But Article 18.1 also states that the minimum wage under the CBA "shall be adjusted" from $20.07 to $20.15 "upon the Effective Date of this Agreement." OCBA, Dkt. 2-1 § 18.1. And the effective date of the

Operative CBA was February 15, 2023, well after the higher California minimum wage went into effect on January 1, 2023. OCBA, Dkt. 2-1 § 1.1. Section 18.1, therefore, creates an even larger gap than the February 10 date referenced in the Operative CBA's pay table, and does not aid Defendant's argument. By the plain terms of the CBAs, there was a period of time during which the CBAs provided for a minimum wage insufficient to trigger the Section 514 exemption.

Lastly, Defendant suggests that Section 514 is still applicable, and the CBAs still preempt Plaintiff's state law claims, because "the vast majority of the employees were still paid compliant rates." Opp. at 8:2. As Defendant acknowledges, courts are split as to whether Section 514 is satisfied under such circumstances. See Huerta v. Doubletree Emp. LLC, No. SACV 23-02433-CJC (ADSX), 2024 WL 890548, at *3 (C.D. Cal. Mar. 1, 2024). "Most district courts within the Ninth Circuit that have considered the issue," however, "have reached the same conclusion: A collective bargaining agreement must provide 130% of the minimum wage to every employee covered by the agreement in order to qualify for the Section 514 exemption as to any employee." Camarena-Regalado v. S. California Permanente Med. Grp., No. LACV22206010JAKJPRX, 2023 WL 6216708, at *5 (C.D. Cal. Sept. 25, 2023); see also Tjoa v. THC - Orange Cnty., LLC, No. 8:25-CV-02366-FWS-JDE, 2026 WL 458233, at *3 (C.D. Cal. Feb. 17, 2026) ("Because the CBA does not cover the entire, alleged class period, meaning that several months of Plaintiff's overtime wages claim arise under California law, the court finds that the overtime wages claim does not exist solely as a result of the CBA." (internal quotation marks and alteration omitted); Griffin v. Stellant Sys., Inc., No. 2:25-CV-06760-SPG-SK, 2026 WL 851298, at *7 (C.D. Cal. Feb. 10, 2026) ("The Court thus finds from a plain reading of § 514 that it unambiguously requires the CBAs to provide for the 'wages, hours of work, and working conditions' and wage rates set forth in the provision of *all* the employees covered by the CBAs."); Carrillo v. Monterey Mech. Co., No. 24-CV-09202-LJC, 2025

WL 2615064, at *12 (N.D. Cal. Sept. 10, 2025) ("Because the CBA did not provide for at least thirty percent more than minimum wage for all employees at all relevant times, section 514 does not apply to Carrillo's overtime claim under section 510, and the claim is not preempted at Step 1 of the analysis under Curtis."); Ulloa v. Blackstone Consulting, Inc., No. 5:24-CV-01134-HDV-SKX, 2025 WL 306380, at *4 (C.D. Cal. Jan. 27, 2025) (collecting cases) ("[T]he better-reasoned approach—and the one most faithful to the text of the statute—is to require a finding that the 130% wage premium applies to all union employees."); Berreyes v. S. California Gas Co., No. 522CV01223SSSSPX, 2023 WL 2536720, at *3 (C.D. Cal. Mar. 16, 2023) ("Section 514's plain language makes clear that the CBA must comply with the requirements of Section 514 for all employees covered by the CBA, not just some.")

This Court agrees with the majority view. As the court explained in Ulloa, the "overtime claim cannot be said to arise 'solely' or 'purely' out of a CBA because[,] for [some] period[,] the right arose out of California wage and hour law." Ulloa, 2025 WL 306380, at *4. "Section 514 cannot exempt the application of California law for this [] period since[, during the gap period], there was no qualifying CBA to nullify the applicability of Section 510(a)." Id.

Because Plaintiff's wage claim does not "involve[] a right that exists solely as a result of the CBA," the Court must proceed to step two of the Burnside preemption test. Curtis, 913 F.3d at 1152 (internal alteration and quotation marks omitted).

**B. Step Two**

At step two, the Court must determine "whether a plaintiff's state law right is substantially dependent on analysis of the CBA, which turns on whether the claim cannot be resolved by simply 'looking to' versus 'interpreting' the CBA." Curtis, 913 F.3d at 1153 (internal alteration and quotation marks omitted); see also Burnside, 491 F.3d at 1060. Defendant argues only briefly that step two of the Burnside test is satisfied here because of Article 18.1 in the Operative CBA, discussed above. To

recap, Article 18.1 provided that the lowest rate of pay in the CBA "shall be adjusted" from $20.07 to $20.15 "upon the Effective Date of this Agreement," or February 15, 2023. OCBA, Dkt. 2-1 §§ 1.1, 18.1. Defendant conclusorily asserts that "interpretation of this clause is required to determine if . . . employees were paid 130% of the minimum wage in January and February 15 [sic], 2023." Opp. at 10:20–22.

In fairness, "the 'look to'/'interpret' distinction is not always clear or amenable to a bright line test." Burnside 491 F.3d at 1060 (internal quotation marks omitted). But this case bears little resemblance to cases in which interpretation of a CBA was deemed to be required. In Firestone v. Southern California Gas Co., 219 F.3d 1063 (9th Cir. 2000), for example, the Ninth Circuit analyzed an agreement that paid a flat sum calculated by multiplying workers' hourly base rate by the expected time to complete a certain task. Firestone, 219 F.3d at 1065. Employees who worked overtime received an adjustment to that flat sum. Id. The parties disputed, however, how that adjustment was calculated, and thus what constituted a "regular rate" of pay. Id. at 1066. This, the court explained, constituted a "disagree[ment] on the meaning of terms in the collective bargaining agreement for purposes of California law." Id. Thus, the court concluded, "one could not determine whether plaintiffs were receiving a 'premium wage rate' for overtime under the collective bargaining agreement . . . without interpreting that agreement to determine . . . what the regular rate was." Id. The claim was not, therefore, independent of the collective bargaining agreement, and was preempted. Id.

But even where a CBA includes "fairly complicated procedures and . . . a hefty dose of industry jargon," interpretation is not required where the meaning of the provisions is not ambiguous. Balcorta, 208 F.3d at 1109-10. And here, Article 18.1 includes no complicated procedures and requires no parsing of terminology to determine the applicable minimum rate of pay. As discussed above, Article 18.1

clearly states that the lowest rate of pay "shall be adjusted" from $20.07 to $20.15 "upon the Effective Date of this Agreement," February 15, 2023. OCBA, Dkt. 2-1 §§ 1.1, 18.1. Contrary to Defendant's assertion, no interpretation is required to determine whether the CBA provided for employees to be paid 130% of the minimum wage from January 1, 2023 to February 15, 2023. This Court need only look to the plain terms of Article 18.1 to determine that the Operative CBA did no such thing. Plaintiff's state law claim is, therefore, not substantially dependent on analysis of the CBA, and is not preempted, and this Court lacks federal question jurisdiction over Plaintiff's wage claim.

## V.

## CONCLUSION AND ORDER

For the reasons stated above, Plaintiff's Motion to Remand is **GRANTED.**

**IT IS THEREFORE ORDERED**:

This action is **REMANDED** to Los Angeles County Superior Court.

Dated: September 24, 2026

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge